IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILADELPHIA TAXI ASSOCIATION, INC., et al. | : | CIVIL ACTION |
| | : | |
| | : | No. 16-1207 |
| v. | : | |
| | : | |
| UBER TECHNOLOGIES, INC. | : | |

### MEMORANDUM

**Juan R. Sánchez, J.**                                                   **November 3, 2016**

Uber Technologies, Inc. moves to dismiss Plaintiffs' Amended Complaint, which asserts an attempted monopolization claim in violation of federal antitrust law and state law claims of unfair competition and tortious interference with present and prospective contractual relations. Since Uber entered the Philadelphia taxicab market in 2014, Plaintiffs—the Philadelphia Taxi Association, Inc. along with about 80 transportation and taxi companies—have experienced significant decreases in demand for their services and, in turn, their investments and earnings. Plaintiffs' claims against Uber are further grounded in Uber's alleged violations of state and local regulations. Because the Court finds Plaintiffs have not established antitrust standing and have failed to plead a proper basis for either unfair competition or tortious interference, Defendant's motion will be granted and Plaintiffs' Amended Complaint will be dismissed.

## BACKGROUND[1]

In March 2016, Plaintiffs initiated this action against Uber Technologies, Inc., and amended their Complaint in June 2016, alleging attempted monopolization in violation of federal

---

[1] The following facts are drawn from Plaintiffs' Amended Complaint and the exhibits attached thereto. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complaint's claims are based upon these documents.").

antitrust law and state law claims of tortious interference with contract relations and unfair competition.

Plaintiff Philadelphia Taxi Association, Inc. (PTA) is a Pennsylvania corporation, formed six months after Uber entered the Philadelphia market and organized for the purpose of advancing the legal interests of its members: Philadelphia taxicab companies that own licenses, called medallions, to operate taxicab services in Philadelphia issued by the Philadelphia Parking Authority (PPA). PTA members make up the remaining individual Plaintiffs. Although Uber holds itself out to be a "transportation network company," Plaintiffs assert Uber simply provides taxicab services, just as Plaintiffs do.

The PPA maintains regulatory authority over vehicle-for-hire, or taxicab, services. Under PPA regulations, taxicabs in Philadelphia must obtain a medallion[2] and a certificate of public convenience.[3] The PPA also requires taxicab companies to comply with other requirements, including paying a prevailing minimum wage,[4] and holds the taxicab companies legally and operationally responsible for supervising vehicles and drivers, including insuring the vehicles, making sure the vehicles comply with PPA requirements, and only hiring drivers who comply with PPA regulations.

---

[2] Medallions are required for all Philadelphia cabs. Under 53 Pa. C.S.A. § 5712, a medallion "provide[s] holders of certificates of public convenience . . . the opportunity to upgrade and improve the operations of taxicabs."

[3] There are two types of certificates: one for "partial rights cabs" and another for medallion cabs. Where partial rights cabs are only authorized to provide services in specified parts of the city or under certain restrictions, Medallion cabs may generally transport people throughout Philadelphia.

[4] Rather than a minimum wage, a certificate holder may choose to charge no more than prevailing maximum lease rate to cab drivers.

The individual Plaintiff taxicab companies hold medallions and certificates, and otherwise fully comply with PPA regulations. Uber does not. Uber's participation in the Philadelphia taxicab market, according to Plaintiffs, is therefore illegal.

Uber actively recruits drivers from the Plaintiff taxicab companies, distributing applications and offering financial incentives to work for Uber instead of for Plaintiffs. Roughly 1,200 drivers have stopped working for Plaintiffs and now work for Uber. Just as Uber does not comply with PPA regulations, it does not require the drivers to do so.

Since Uber's entrance into Philadelphia's taxicab market in 2014, the value of a taxicab medallion has dropped dramatically. Uber has not only "flooded" the Philadelphia taxicab marketplace with additional cars and drivers operating without medallions in violation of PPA regulations, Am. Compl. ¶ 51, but also, by violating the law, Uber has been able to operate at a significantly lower price than Plaintiffs and offer inducements to Plaintiffs' drivers to drive for Uber. Plaintiffs have been unable to replace those drivers who have stopped working for them and now drive for Uber, thus leaving many of Plaintiffs' medallions unused. Prior to Uber operating in Philadelphia, the average value of a medallion was $530,000.[5] A medallion is now worth $80,000.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint when it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

---

[5] Medallions are treated as property—*e.g.*, medallions can be pledged as security to creditors and cannot be revoked or cancelled by the PPA—and Plaintiffs assert medallions have been instrumental in improving the taxi service and increasing ridership, profitability. In turn, the value of a medallion has climbed; specifically, in 2005, when the PPA implemented the medallion system, the value of a medallion was $65,000, and in 2014, the value jumped to $530,000.

*Twombly*, 550 U.S. 544, 570 (2007)). Because of the burdens discovery imposes on defendants in antitrust cases, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

**DISCUSSION**

Uber moves to dismiss Plaintiffs' Amended Complaint, asserting Plaintiffs have failed to establish antitrust standing to support their attempted monopolization claim and have otherwise failed to state a claim for unfair competition and tortious interference with present and prospective contractual relations. The Court finds Plaintiffs have merely alleged harm they have felt to their operations, investments, and earnings since Uber entered the Philadelphia taxicab market, along with allegations that Uber's participation in the market is illegal under state and local regulations. Such harm or violations, however, are not the type of injuries the antitrust laws were intended to prevent, and thus do not establish antitrust standing. Moreover, the state and local regulations at issue do not provide a private right of action and accordingly cannot form the basis of Plaintiffs' unfair competition and tortious interference claims.

Plaintiffs' federal antitrust claim for attempted monopolization fails because Plaintiffs do

not have antitrust standing. To establish an actionable antitrust violation, a plaintiff must plead a

basis for antitrust standing. In determining whether a plaintiff has antitrust standing, the Third

Circuit has articulated several factors courts should consider:

> (1) the causal connection between the antitrust violation and the
> harm to the plaintiff and the intent by the defendant to cause that
> harm, with neither factor alone conferring standing; (2) whether
> the plaintiff's alleged injury is of the type for which the antitrust
> laws were intended to provide redress; (3) the directness of the
> injury, which addresses the concerns that liberal application of
> standing principles might produce speculative claims; (4) the
> existence of more direct victims of the alleged antitrust violations;
> and (5) the potential for duplicative recovery or complex
> apportionment of damages.

*In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1165 (3d Cir. 1993) (citing

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 545

(1983)).

　　　While the factors suggest a balancing test to determine whether a plaintiff has established

antitrust standing, the second factor, antitrust injury, is "a *necessary* but insufficient condition of

antitrust standing." *Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178, 182 (3d

Cir. 1997) (emphasis added); *see also Ethypharm S.A. France v. Abott Labs.*, 707 F.3d 223, 233

(3d Cir. 2013) ("If [antitrust injury] is lacking, we need not address the remaining [antitrust

standing] factors."). To properly plead antitrust injury, a plaintiff must show "more than injury

causally linked to an illegal presence in the market"; instead, as the factors above indicate, a

Plaintiff must plead "injury of the type the antitrust laws were intended to prevent and that flows

from that which makes defendant['s] acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat,

Inc.*, 429 U.S. 477, 489 (1977). In other words, to establish antitrust injury, "antitrust plaintiff[s]

must prove that the challenged conduct affected the prices, quantity or quality of goods and

services, not just [the plaintiffs'] welfare." *Matthews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 641

(3d Cir. 1996) (quotations omitted). This requirement flows from the fundamental purpose of antitrust law: "to protect competition, not competitors." *Id.*

Here, Plaintiffs have failed to establish antitrust injury because they do not allege any injury to competition. Instead, their Amended Complaint is limited to injuries Plaintiffs have suffered as competitors with Uber: the value of Plaintiffs' medallions have decreased sharply; taxicab companies, including Plaintiffs, have experienced a decline in demand and thus earnings; Plaintiffs' share of the Philadelphia market is shrinking; and a portion of Plaintiffs' employees have stopped working for them and now work for Uber.

While Plaintiffs themselves have undoubtedly suffered injury since Uber began operating in Philadelphia, competition has not. According to Plaintiffs, Uber has "flooded the marketplace," Am. Compl. ¶ 51, providing 1,000,000 trips to 700,000 riders, using 1700 vehicles and drivers. Plaintiffs have extensively pleaded detriment to their own welfare, but have failed to alert this Court of any negative impact Uber's presence in the marketplace has had on the price, quality, or quantity of taxicab or vehicle-for-hire services—essential indications of antitrust injury.

Plaintiffs attempt to establish antitrust injury by alleging Uber's presence in the marketplace is unlawful under state and local regulations. Plaintiffs argue that Uber, by operating illegally in Philadelphia, manifests intent to destroy competition or obtain a monopoly. Plaintiffs rely on a decision by Judge Sheldon C. Jelin, presiding as the Hearing Officer for the PPA Taxicab and Limousine Division, holding Uber is subject to PPA's jurisdiction and its regulations, and that Uber's operations violated Pennsylvania law because the vehicle in question did not have a medallion or certificate of public convenience and the driver in question did not have authority from the PPA to operate a taxicab. *See* Am. Compl. ¶ 52-54; *Phila. Parking Auth.*

6

*v. Phillipe*, No. 14-10-82 (Phila. Parking Auth. Jan. 22, 2015). The PPA decision was appealed to the Court of Common Pleas, where it was affirmed. *See* Am. Compl. ¶ 55; *Phillipe v. Phila. Parking Auth.*, No. 150603546 (Pa. Ct. Com. Pl. Feb. 18, 2016).

Plaintiffs' argument is misplaced. Contrary to Plaintiffs' assertion, violation of state law or municipal regulations does not give rise to an antitrust injury. To establish antitrust injury, Plaintiff "must prove more than injury causally linked to an illegal presence in the market." *Brunswick Corp.*, 429 U.S. at 489. Analogous to this case, the Seventh Circuit recently rejected a taxicab association's argument that the city of Chicago is depriving taxicab companies of their property interest in medallions by permitting Uber to operate without medallions. *See Ill. Trans. Trade. Ass'n. v. City of Chicago*, --- F.3d ---, 2016 WL 5859703 (7th Cir. Oct. 7, 2016). Although the Chicago taxicab companies' argument arose out of their property interest in their medallions, the basis of the argument is the same as here: Uber should not be permitted to operate in the relevant market without complying with the market's regulations on taxicabs. As the Seventh Circuit found, "[a]ll that the City gives taxi-medallion owners is the right to operate taxicabs in [the City]," which "isn't a right to exclude competitive providers of transportation." *Id.* at *3. If Plaintiffs seek to prevent Uber from operating in the Philadelphia market, it may seek refuge in PPA regulations, not antitrust law. *Cf. id.* (quoting *Boston Taxi Owners Ass'n., Inc. v. City of Boston*, --- F. Supp. 3d ---, 2016 WL 1274531, at *5 (D. Mass. March 31, 2016)) ("[I]f a person who wishes to operate a taxicab without a medallion is prevented from doing so, it is because he or she would violate municipal regulations, not because he or she would violate medallion owners' property rights."). Even if this Court were to find Uber's operation unlawful, it would do so under PPA regulations, not antitrust law. Because Plaintiffs have not pleaded injury of the type the antitrust laws were intended to prevent, the Court finds Plaintiffs lack

antitrust standing and will grant Defendant's motion to dismiss Plaintiffs' attempted monopolization claim.

Plaintiffs also bring a claim for unfair competition under Pennsylvania common law, asserting Uber is "using the money it gained from its illegal operation in an attempt to drive the Individual Plaintiffs from the marketplace." Am. Compl. ¶ 93. Under Pennsylvania common law, unfair competition is traditionally defined as the "passing off" of a competitor's goods as ones' own, creating confusion between the goods. *See Giordano v. Claudio*, 714 F. Supp. 2d 508, 521 (E.D. Pa. 2010) (citing *Scanvec Amiable Ltd. v. Chang*, 80 F. App'x 171, 180 (3d Cir. 2003)). Unfair competition has also been interpreted to encompass more than mere "passing off," including the "improper use of a rival's confidential information or profiting from a rival's expenditure of labor, skill, or money." *Larry Pitt & Assocs. v. Lundy Law, LLP*, 57 F. Supp. 3d 445, 456 (E.D. Pa. 2014) (citing *Granite State Ins. Co. v. Aamco Transmissions, Inc.*, 57 F.3d 316, 320 (3d Cir. 1995)).[6]

---

[6] The scope of a common law claim of "unfair competition is coextensive with Restatement (Third) of unfair competition." *Giordano*, 714 F. Supp. 2d at 521-22 (collecting cases). The Restatement (Third) of Unfair Competition provides

> One who causes harm to the commercial relations of another by engaging in a business or trade is not subject to liability to the other for such harm unless:
>> (a) the harm results from acts or practices of the actor actionable by the other under the rules of this Restatement relating to:
>>> (1) deceptive marketing, as specified in Chapter Two;
>>> (2) infringement of trademarks and other indicia of identification, as specified in Chapter Three;
>>> (3) appropriation of intangible trade values including trade secrets and the right of publicity, as specified in Chapter Four;
>> or from other acts or practices of the actor determined to be actionable as an unfair method of competition, taking into account the nature of the conduct and its likely effect on both the person seeking relief and the public . . . .

Restatement (Third) of Unfair Competition § 1.

Plaintiffs' claim necessarily fails, however, as it is premised on violations of state and local regulations which do not create a private right of action and thus cannot form the basis of an unfair competition claim. In *Checker Cab Phila. Inc. v. Uber Techs., Inc.*, a group of taxicab operators brought state law unfair competition and analogous federal antitrust claims under the Lanham Act, alleging Uber "gained an unfair competitive advantage over traditional taxicab dispatch services and locally licensed/authorized taxicab drivers (such as Plaintiffs) because they avoid the cost and burdens of complying with various state laws and local regulations that apply to taxi services in Philadelphia." No 14-7265, 2016 WL 950934, at *3 (E.D. Pa. Mar. 7, 2016). The district court surveyed case law establishing that the Lanham Act, and by extension a state law unfair competition claim,[7] could not be invoked "to create a private cause of action for enforcement of local taxi regulations." *Id.* at *5 (citing *Dial A Car, Inc. v. Transp., Inc.*, 82 F.3d 484 (D.C. Cir. 1996)). Because the claims were "premised on the alleged unlawful or unauthorized provision of taxi services in Philadelphia," the court found "such claims are barred." *Checker Cab*, 2016 WL 950934, at *6. This Court finds no reason to deviate from *Checker Cab*'s reasoning. Plaintiffs' unfair competition claim cannot survive because it arises out of Uber's alleged violations of state and local taxicab regulations, which do not provide a private right of action. The unfair competition claim will therefore be dismissed.

Plaintiffs' tortious interference with an existing or prospective contract claim is likewise

---

[7] While Plaintiffs do not bring a Lanham Act here, courts in this District have uniformly found that a "Pennsylvania common law cause for unfair competition is identical to the Lanham Act, without the federal requirement of interstate commerce." *R.J. Ants, Inc. v. Marinelli Enters., LLC*, 771 F. Supp. 2d 475, 489 (E.D. Pa. 2011); *see also Regal Indus., Inc., v. Genal Strap, Inc.*, No. 93-209, 1994 WL 388686, at *2 (E.D. Pa. July 26, 1994) ("The elements of common law unfair competition in Pennsylvania are identical to those necessary to make out a claim under the Lanham Act, except that the Lanham Act requires interstate commerce."). As such, in analyzing Plaintiffs' unfair competition claim, the Court is guided by case law treatment of the Lanham Act.

based on Uber's alleged wrongful recruitment of Plaintiffs' taxicab drivers. Under Pennsylvania law, to state a claim for tortious interference with an existing or prospective contract, Plaintiffs must plead the following:

> (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference.

*Acumed LLC v. Advanced Surgical Svcs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009).

Plaintiffs' tortious interference claim fails because they have at least failed to establish the third element of the claim: the absence of privilege or justification. "[T]o recover on a tortious intentional interference with existing or prospective contractual relationships claim in Pennsylvania, a plaintiff must prove that the defendant was not privileged or justified in interfering with its contracts . . . ." *Id.* at 214 (citing *Triffin v. Janssen*, 626 A.2d 571, 574 n.3 (Pa. Super. Ct. 1993)). Pennsylvania follows the Restatement (Second) of Torts with regard to privilege:

> One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if: (a) the relation concerns a matter involved in the competition between the actor and the other; (b) the actor does not employ wrongful means; (c) his action does not create or continue an unlawful restraint of trade; and (d) his purpose is at least in part to advance his interest in competing with the other.

*See id.* at 215 (quoting Restatement (Second) of Torts § 768). Three of the four requirements for privilege are easily met in this case, and indeed, Plaintiffs only argue privilege does not apply

because Uber employed wrongful means.[8]

Comment e to § 768 explains that "physical violence, fraud, civil suits and criminal prosecutions" amount to wrongful means. Although Pennsylvania courts have not further examined what may constitute "wrongful means," the Third Circuit, relying on § 768, has predicted that the Pennsylvania Supreme Court would likely "interpret[] the wrongful means element to require that a plaintiff, to be successful in a tortious interference action, demonstrate that a defendant engaged in conduct that was actionable on a basis independent of the interference claim." *Acumed*, 561 F.3d at 215.

Plaintiffs fail to demonstrate an independent basis for their tortious interference claim. Like their unfair competition claim, Plaintiffs' tortious interference claim arises out of Uber's alleged violations of state and local regulations. Just as the Court found these alleged violations cannot support Plaintiffs' unfair competition claim, they likewise cannot support their tortious interference claim. Plaintiffs' tortious interference claim will therefore be dismissed.

Because the Court finds all of Plaintiffs' claims deficient, Uber's motion to dismiss will be granted. Plaintiffs seek leave to again amend their Complaint in light of recent case law and legislation passed by the Pennsylvania General Assembly. "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 235-36 (3d Cir. 2004). Plaintiffs will therefore have fourteen days to file a second amended complaint to cure the Amended Complaint's deficiencies. Failure to file a further amended complaint will result in dismissal of the Amended Complaint with prejudice.

---

[8] It cannot be seriously disputed whether the three other elements for privilege exist here. This action centers on Uber's competition with Plaintiffs, satisfying the first element. As to the third element, just as the Court found Plaintiffs do not have antitrust standing, it likewise finds Uber's recruitment did not create or continue an unlawful restraint of trade. As to the last element, Uber, in recruiting drivers, seeks to advance its own interest by staffing its operations in Philadelphia, which Plaintiff pleads is in high demand.

An appropriate Order will follow.


                                        BY THE COURT:


                                        /s/ Juan R. Sánchez
                                        Juan R. Sánchez, J.